UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES – GENERAL

| | | | |
|---|---|---|---|
| Case No. | 2:23-cv-06324-MCS-AS | Date | January 24, 2024 |
| Title | *Ralph Yeomans v. Blue Shield of Cal. et al.* | | |

Present: The Honorable  Mark C. Scarsi, United States District Judge

| Stephen Montes Kerr | Not Reported |
|---|---|
| Deputy Clerk | Court Reporter |

| Attorney(s) Present for Plaintiff(s): | Attorney(s) Present for Defendant(s): |
|---|---|
| None Present | None Present |

Proceedings: (IN CHAMBERS) ORDER RE: MOTION TO REMAND AND MOTION TO DISMISS (ECF NOS. 15, 11)

Plaintiff Ralph Yeomans moves to remand this case to the Los Angeles County Superior Court. (MTR, ECF No. 15.) Defendant Blue Shield of California[1] opposed the motion, (MTR Opp'n, ECF No. 16), and Plaintiff replied, (MTR Reply, ECF No. 28). Separately, Defendant Blue Shield moves to dismiss each of Plaintiff's causes of action. (MTD, ECF No. 11.) Plaintiff opposed the motion, (MTD Opp'n, ECF No. 17), and Defendant replied, (MTD Reply, ECF No. 27). The Court heard argument on both motions on October 30, 2023. (Mins., ECF No. 35.)

I. BACKGROUND

According to the complaint, Plaintiff is a 96-year-old World War II veteran. (Compl. ¶ 6, ECF No. 1-2.) He is "visually impaired, physically disabled, homebound, and struggles to move around his house." (*Id.* ¶ 7.) Blue Shield is a Medicare Advantage Organization ("MAO"), meaning it contracts with the Centers for Medicare and Medicaid Services ("CMS") to "provide Medicare benefits to

---

[1] Unqualified references to Defendant in this Order pertain to the movant and not codefendant Allied Pacific of California IPA ("Allied Pacific").

persons enrolled in Blue Shield's" Medicare Advantage health plans. (Notice of Removal ¶¶ 2, 4, 5.) Medicare Advantage is also known as "Part C" coverage. (*Id.* ¶ 12.) Coverage under Blue Shield's Medicare Advantage plans, including for home health agency care, is determined through CMS regulations, national and local coverage determinations, and guidelines included in Medicare manuals and instructions. (*Id.* ¶¶ 14, 16.) CMS pays Blue Shield a fixed amount each month for each plan enrollee. (*Id.* ¶ 5.)

Plaintiff receives health insurance through Blue Shield's AdvantageOptimum Plan, (Compl. ¶ 8), and is eligible for and requires part-time or intermittent skilled nursing and home health aide services totaling no more than eight hours per day and 35 hours per week, among other benefits, (*id.* ¶ 9). Plaintiff obtained authorization from his doctor to receive in-home care and submitted the authorization to Blue Shield. (*Id.* ¶ 11.) Blue Shield then contracted Defendant Allied Pacific of California IPA, which issued Plaintiff only three visits by an in-home health practitioner for a maximum of 15 minutes a day. (*Id.* ¶ 12.)

As of the date of his complaint, Plaintiff has spent 14 months attempting to contact representatives of Defendants and has submitted a grievance requesting benefits. (*Id.* ¶¶ 13–15.) To date, he has not received the benefits allegedly due under the policy. (*Id.* ¶ 16.) Plaintiff filed this action in Los Angeles County Superior Court on June 30, 2023, asserting four claims: (1) breach of contract, (2) breach of the implied covenant of good faith and fair dealing, (3) elder abuse, and (4) declaratory relief. (*Id.* ¶¶ 17–44.) Defendant removed this action to this Court, asserting jurisdiction under the federal officer removal statute, 28 U.S.C. § 1442(a)(1). (Notice of Removal ¶¶ 4–26, ECF No. 1.)

## II.   MOTION TO REMAND

### A.   Legal Standard

"Federal courts are courts of limited jurisdiction" and "possess only that power authorized by Constitution and statute." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). A defendant may remove an action to federal court if the federal court could exercise original jurisdiction over the action. 28 U.S.C. § 1441(a). "The removal statute is strictly construed against removal jurisdiction," and "[t]he defendant bears the burden of establishing that removal is proper." *Provincial Gov't of Marinduque v. Placer Dome, Inc.*, 582 F.3d 1083, 1087 (9th Cir.

2009). If a defendant fails to meet its burden of establishing subject-matter jurisdiction, the suit is remanded. 28 U.S.C. § 1447(c).

### B. Discussion

Defendant Blue Shield removed this action under the federal officer removal statute, 28 U.S.C. § 1442(a)(1), which allows removal of any civil action against "any officer (or any person acting under that officer) of the United States or of any agency thereof, in an official or individual capacity, for or relating to any act under color of such office." To invoke federal officer removal, a defendant must show that:
(1) it is a "person" within the meaning of the statute,
(2) a causal nexus exists between plaintiffs' claims and the actions defendant took pursuant to a federal officer's direction, and
(3) defendant has a colorable federal defense to plaintiff's claims.

*See Stirling v. Minasian*, 955 F.3d 795, 800 (9th Cir. 2020); *Leite v. Crane Co.*, 749 F.3d 1117, 1120 (9th Cir. 2014). The Supreme Court has noted that "acting under" must be "liberally construed." *Watson v. Philip Morris Cos.*, 551 U.S. 142, 147 (2007). To be "acting under" a federal officer, a private entity must be involved in "an effort to assist, or to help carry out, the duties or tasks of the federal superior." *Id.* at 152 (emphasis removed). The "relationship typically involves subjection, guidance, or control," but it must go beyond simply complying with the law, even if the laws are "highly detailed" and thus leave the entity "highly regulated." *Id.* at 151–53 (cleaned up). Thus, "[t]he assistance that private contractors provide federal officers [must go] beyond simple compliance with the law and help[] officers fulfill other basic governmental tasks." *Id.* at 153.

Plaintiff does not dispute that Blue Shield has satisfied the first and third elements for federal officer removal. Corporations qualify as "persons" under 28 U.S.C. § 1442(a)(1). *Goncalves v. Rady Children's Hosp. San Diego*, 865 F.3d 1237, 1244 (9th Cir. 2017). And Blue Shield argues that it has at least two colorable federal defenses, failure to exhaust available administrative remedies, 42 U.S.C. § 405(g)–(h), and preemption, 42 U.S.C. § 1395w-26(b)(3). (Notice of Removal ¶¶ 17–20.) Thus, Blue Shield satisfies the first and third elements.

As to the second element, Plaintiff asks the Court to follow the Sixth Circuit and *Vaccarino v. Aetna, Inc.*, No. EDCV 18-02349 JGB (SHKx), 2018 WL 6249707, at *5 (C.D. Cal. Nov. 29, 2018), to find that an MAO "does not 'act under' a federal officer simply because its activities are directed, supervised, and monitored by an agency." *Ohio State Chiropractic Ass'n v. Human Health Plan Inc.*, 647 F. App'x

619, 622 (6th Cir. 2016); (MTR 4–5). But the Court is more inclined to agree with the majority of district courts, which have held that MAOs administering Part C benefits fall within the category of highly regulated private contractors described in *Watson* and thus are "acting under" CMS in a manner that entitles them to removal under § 1442(a)(1). *See Inchauspe v. Scan Health Plan*, No. 17-cv-6011-CAS (JCx), 2018 WL 566790, at *5 (C.D. Cal. Jan. 23, 2018); *Body & Mind Acupuncture v. Humana Health Plan, Inc.*, No. 1:16CV211, 2017 WL 653270, at *5. (N.D. W. Va. Feb. 16, 2017) (collecting cases). By administering Medicare benefits, Blue Shield helps CMS "fulfill [a] basic governmental task." *Watson*, 551 U.S. at 153. Without MAOs such as Blue Shield, "CMS would be obligated to administer Medicare benefits through Parts A and B to those individuals who currently elect Part C coverage." *Body & Mind Acupuncture*, 2017 WL 653270, at *5. Thus, Blue Shield's activities "involve an effort to assist, or to help carry out, the duties to tasks of" CMS in a manner much more significant than "simply complying with the law." *Watson*, 551 U.S. at 153 (emphasis removed). Further, Blue Shield's benefits determinations and quality of care are subject to detailed regulations and administrative review by CMS, showing that their relationship is "an unusually close one involving detailed regulation, monitoring, and supervision." *Id.*

In light of the Supreme Court's guidance that the federal officer removal statute must be "liberally construed," the Court finds that Blue Shield was "acting under" CMS when it engaged in the actions that are the subject to plaintiff's complaint. The motion to remand is denied.

### III.  MOTION TO DISMISS

#### A.  Legal Standards

##### 1.  Rule 12(b)(1)

Federal Rule of Civil Procedure 12(b)(1) authorizes a party to seek dismissal of an action for lack of subject-matter jurisdiction. Rule 12(b)(1) jurisdictional challenges can be either facial or factual. *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004). When a motion to dismiss attacks subject-matter jurisdiction on the face of the complaint, as here, the court assumes the factual allegations in the complaint are true and draws all reasonable inferences in the plaintiff's favor. *Doe v. Holy See*, 557 F.3d 1066, 1073 (9th Cir. 2009).

/ / /

2. Rule 12(b)(6)

Federal Rule of Civil Procedure 12(b)(6) allows an attack on the pleadings for "failure to state a claim upon which relief can be granted." "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

The determination of whether a complaint satisfies the plausibility standard is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679. Generally, a court must accept the factual allegations in the pleadings as true and view them in the light most favorable to the plaintiff. *Park v. Thompson*, 851 F.3d 910, 918 (9th Cir. 2017); *Lee v. City of Los Angeles*, 250 F.3d 668, 679 (9th Cir. 2001). But a court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555).

B. Discussion

Defendant Blue Shield moves to dismiss all of Plaintiff's claims on two related grounds. First, Defendant contends that all of Plaintiff's claims "arise under" the Medicare Act and therefore should be dismissed pursuant to Rule 12(b)(1) for failure to exhaust the Act's mandatory administrative review procedures. (MTD 5–10.) Second, Defendant argues that all of Plaintiff's claims should be dismissed pursuant to Rule 12(b)(6) because they are expressly preempted by 42 U.S.C. § 1395w-26(b)(3). (MTD 10–12.)

1. Administrative Exhaustion

Exhaustion presents a jurisdictional issue. *See Uhm v. Humana, Inc.*, 620 F.3d 1134, 1140–41 (9th Cir. 2010). The Medicare Act's exhaustion requirement, 42 U.S.C. § 405(h), makes judicial review under a related provision, 42 U.S.C. § 405(g), "the sole avenue for judicial review for all 'claims arising under' the Medicare Act." *Heckler v. Ringer*, 466 U.S. 602, 614–15 (1984) (cleaned up). In *Ringer*, the Supreme Court held that a claim "arises under" the Medicare Act and is therefore subject to this exhaustion requirement (1) where the "standing and

substantive basis for the presentation of the claims" is the Medicare Act; or (2) where the claims are "inextricably intertwined" with a claim for Medicare benefits. *Id.* The *Ringer* plaintiffs were four Medicare beneficiaries who suffered from respiratory distress; three had had surgery known as bilateral carotid body resection and were seeking reimbursement, and one requested the surgery but claimed he could not afford it absent Medicare coverage. *Id.* at 605. The Supreme Court held that, at bottom, the plaintiffs sought Medicare reimbursement or authorization for a particular surgical procedure, and therefore the claim was one in which both the standing and the substantive basis of the claim was the Act. *Id.* at 614, 624. However, the Court noted that exhaustion may not be appropriate where a plaintiff's claim is "wholly 'collateral'" to a claim for benefits and "his injury could not be remedied by the retroactive payment of benefits after exhaustion of his administrative remedies." *Id.* at 618.

But in *Ardary v. Aetna Health Plans of California, Inc.*, 98 F.3d 496 (9th Cir. 1996), the Ninth Circuit recognized that state law claims for damages arising from tortious conduct committed by a Medicare provider may not "arise under" the Act. In that case, a Medicare beneficiary suffered a heart attack and was refused an airlift to a medical facility more sophisticated than those available nearby. *Id.* at 500. When the beneficiary died, her family sued the HMO and its contractor in state court for negligence, intentional and negligent infliction of emotional distress, misrepresentation, and professional negligence. *Id.* at 498. The defendants removed to federal court and sought dismissal, arguing that all of the plaintiffs' state law claims were related to the denial of Medicare benefits and were therefore preempted. *Id.* Even though plaintiffs conceded their claims were "predicated on" the HMO's failure to authorize the airlift, the Ninth Circuit held that the plaintiffs' claims were not "inextricably intertwined" with the denial of Medicare benefits because the plaintiffs were "at bottom not seeking to recover benefits" and their injuries could not be "remedied by the retroactive authorization or payment." *Id.* at 500–01.

Similarly, the California Supreme Court in *McCall v. PacifiCare of California, Inc.*, 25 Cal. 4th 412 (2001), held that a plaintiff's state law claims against an HMO arising out of its refusal to provide Medicare services were not subject to the Act's exhaustion requirement. *Id.* at 415. The court held "[t]he 'inextricably intertwined' language in *Ringer* is more correctly read as sweeping within the administrative review process only those claims that, 'at bottom,' seek reimbursement or payment for medical services, but not a claim" that "incidentally refers to a denial of benefits under the Medicare Act." *Id.* at 425. The court concluded that because the plaintiffs "may be able to prove the elements of some or all of their causes of action without

regard, or only incidentally, to Medicare coverage determinations, because . . . none of their causes of action seeks, at bottom, payment or reimbursement of a Medicare claim or falls within the Medicare administrative review process, and because the harm they allegedly suffered thus is not remediable within that process, it follows" that their claims were not subject to the Act's exhaustion requirement." *Id.* at 426.

Blue Shield argues that all of Plaintiff's claims are based on Blue Shield's denial of home health services and are therefore subject to the Medicare Act's administrative remedy exhaustion requirement. (MTD 6–10.) Plaintiff counters that many of his claims "are based upon the Defendants' reprehensible actions." (Opp'n MTD 7–8.)

Having reviewed the complaint in light of the foregoing authorities, the Court finds that the answer is mixed. The elder abuse claim does not, at bottom, seek Medicare benefits or reimbursement for Blue Shield's failure to provide those benefits. *Cf. Ringer*, 466 U.S. at 614 (plaintiffs sought reimbursement for surgeries already performed or prospective approval for the procedure); *Uhm*, 620 F.3d 1134 at 1143–44 (plaintiffs paid for medication out of pocket and were at bottom seeking reimbursement). Rather, Plaintiff's elder abuse claim seeks damages for his mental suffering caused by Blue Shield's failure to provide adequate medical care. As in *Ardary*, Plaintiff's claims may be predicated on Blue Shield's failure to authorize acute home health care, but Plaintiff is not seeking to recover Medicare benefits, and his injuries cannot be remedied by a retroactive payment of benefits. *See Ardary*, 98 F.3d at 500–01. Thus, Plaintiff's elder abuse claim is comparable to those in *Ardary* in that they are not "inextricably intertwined" with a claim for benefits and do not "arise under" the Act. Therefore, Plaintiff is not required to exhaust Medicare's administrative review procedures before seeking judicial review.

In contrast, Plaintiff's claims for breach of contract, breach of the implied covenant of good faith and fair dealing, and declaratory relief either seek damages for an alleged breach of the insurance contract or a declaration that Plaintiff is entitled to the home healthcare assistance that he requests. Similar to the plaintiffs in *Ringer* and *Uhm*, Plaintiff seeks to recover his Medicare benefits. Thus, these are effectively claims for benefits arising under the Medicare Act, and Plaintiff is required to exhaust Medicare's administrative review procedures before seeking judicial review.

As such, the Court dismisses the breach of contract, breach of the implied covenant of good faith and fair dealing, and declaratory relief claims without prejudice under Rule 12(b)(1).

2. <u>Preemption</u>

Medicare Part C's preemption clause reads: "The standards established under this part shall supersede any State law or regulation (other than State licensing laws or State laws relating to plan solvency) with respect to MA plans which are offered by MA organizations under this part." 42 U.S.C. § 1395W-26(B)(3). In interpreting this provision, CMS indicated that "all State standards, including those established through case law, are preempted to the extent that they specifically would regulate MA plans, with exceptions of State licensing and solvency laws." Medicare Program; Establishment of the Medicare Advantage Program, 70 Fed. Reg. 4588, 4665 (Jan. 28, 2006). But CMS noted that "[o]ther State health and safety standards, or generally applicable standards, that do not involve regulation of an MA plan are not preempted." *Id.*

Defendant Blue Shield argues that Plaintiff's claims "are preempted because they do not involve state licensing law or plan solvency . . . and because federal law establishes the applicable standard." (MTD 12.) Plaintiff counters that Blue Shield's characterization oversimplifies Plaintiff's complaint, which seeks "to recover damages as a result of Defendants' wrongful actions in the administration" of the plan. (MTD Opp'n 9–10.)

The Court agrees with Defendant as to the remaining elder abuse claim premised on Welfare and Institutions Code section 15610.30. In *Uhm*, the Ninth Circuit concluded that "[w]ere a state court to determine that [defendant]'s marketing materials constituted misrepresentations resulting in fraud or fraud in the inducement, it would directly undermine CMS's prior determination that those materials were not misleading." 620 F.3d at 1157. Thus, because CMS had already approved the defendant's marketing materials based on detailed regulations, a finding of fraud by a state court would "undermine CMS's ability to create its own standards for what constitutes 'misleading' information." *Id.* The situation would be similar here for Plaintiff's causes of action seeking the benefits, namely breach of contract, breach of the covenant of good faith and fair dealing, and declaratory relief.

The same is true for Plaintiff's financial elder abuse claim. To prove a claim for financial elder abuse, Plaintiff must show that:

(1) Defendant retained Plaintiff's property;
(2) Plaintiff was 65 years of age or older at the time of the conduct;
(3) **Defendant retained the property for a wrongful use or with intent to defraud**;
(4) Plaintiff was harmed; and
(5) Defendant's conduct was a substantial factor in causing Plaintiff's harm.

See CACI No. 3100; Cal. Welf. & Inst. Code § 15610.30. As such, to prevail on the elder abuse claim under the theory Plaintiff advances, Plaintiff would have to prove that he is entitled to the home health care services that were denied. Such a determination could be inconsistent with federal standards if CMS determines through the administrative remedy process that Plaintiff is not entitled to the home health care services.

The Court therefore finds that Plaintiff's financial elder abuse claim is preempted by 42 U.S.C. § 1395w-26(b)(3) and dismisses it. But this ground for dismissal does not apply to Plaintiff's elder neglect theory, discussed further below, because the elder neglect claim does not require that Plaintiff prove that he was entitled to the home health care services.

### 3. Elder Neglect

The one remaining theory is Plaintiff's claim for elder neglect under Welfare and Institutions Code section 15610.57. (Compl ¶ 36.) To prove a claim for elder neglect, Plaintiff must show that:

(1) Defendant had a substantial caretaking or custodial relationship with Plaintiff, involving ongoing responsibility for his basic needs, which an able-bodied and fully competent adult would ordinarily be capable of managing without assistance;
(2) Plaintiff was 65 years of age or older or a dependent adult while he was in Defendant's care of custody;
(3) Defendant failed to use the degree of care that a reasonable person in the same situation would have used in providing Plaintiff's basic needs;
(4) Plaintiff was harmed; and
(5) Defendant's conduct was a substantial factor in causing Plaintiff's harm.

See CACI No. 3103; Cal. Welf & Inst. Code § 15610.57.

Defendant briefly challenges this theory in a footnote. (Mot. 12 n.4.) Notwithstanding the cursory argument, the Court agrees with Defendant that

Plaintiff does not allege that Defendant had a substantial caretaking or custodial relationship with Plaintiff. *See Oroville Hosp. v. Superior Ct.*, 74 Cal. App. 5th 382, 401 (2022) ("The Elder Abuse Act 'does not apply unless the defendant health care provider had a substantial caretaking or custodial relationship, involving ongoing responsibility for one or more basic needs, with the elder patient.'" (quoting *Winn v. Pioneer Med. Grp.*, 63 Cal. 4th 148, 155 (2016)). The fact that Defendant allegedly had a contractual responsibility to furnish certain health services to Plaintiff does not on its own give rise to an inference of the caretaking or custodial relationship necessary to sustain the theory. (*See* Compl. ¶ 9); *Winn*, 63 Cal. 4th at 158 ("What [Cal. Welf. & Inst. Code § 15610.57] seem[s] to contemplate is the existence of a robust caretaking or custodial relationship—that is, a relationship where a certain party has assumed a significant measure of responsibility for attending to one or more of an elder's basic needs that an able-bodied and fully competent adult would ordinarily be capable of managing without assistance.") For this reason, this theory of the elder abuse claim is dismissed.

### 4. Leave to Amend

Generally, "[t]he court should freely give leave [to amend] when justice so requires." Fed. R. Civ. P. 15(a)(2). "This policy is to be applied with extreme liberality." *Hoang v. Bank of Am., N.A.*, 910 F.3d 1096, 1102 (9th Cir. 2018) (internal quotation marks omitted). "Courts may decline to grant leave to amend only if there is strong evidence of 'undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendment previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [or] futility of amendment, etc.'" *Sonoma Cnty. Ass'n of Retired Emps. v. Sonoma County*, 708 F.3d 1109, 1117 (9th Cir. 2013). Here, any amendment at this time to the breach of contract, breach of the covenant of good faith and fair dealing, declaratory relief, and financial elder abuse claims would obviously be futile. As noted above, the Court does not have jurisdiction over the contract, good faith, and declaratory relief claims until after the administrative process concludes, and the financial elder abuse claim is preempted. Thus, the Court denies leave to amend these claims.

But the pleading deficiencies with respect to the elder neglect claim might be cured with the inclusion of additional factual allegations. Thus, the Court grants Plaintiff leave to amend the elder abuse claim insofar as it rests on Welfare and Institutions Code section 15610.57.

## IV.     CONCLUSION

The Court DENIES the motion to remand. The Court GRANTS the motion to dismiss. The breach of contract, breach of the covenant of good faith and fair dealing, and declaratory relief claims in the complaint are dismissed without prejudice but without leave to amend under Rule 12(b)(1) for failure to exhaust the administrative remedy process. The financial elder abuse claim in the complaint is dismissed without leave to amend under Rule 12(b)(6) for failure to state a claim upon which relief can be granted. The elder neglect claim is dismissed with leave to amend.

Plaintiff may file an amended complaint within 14 days if he can do so consistent with this order and Rule 11(b). Failure to file a timely amended complaint will waive the right to do so. Plaintiff must attach to the amended complaint a "redline" version showing all additions and deletions of material. (Initial Standing Order § 9(a), ECF No. 33.)

**IT IS SO ORDERED.**